PEARSON, J.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| PAMELA BLIGH-GLOVER, FIDUCIARY OF THE ESTATE OF WILLIAM Z. BLIGH-GLOVER, DECEASED, | ) ) ) | CASE NO.  1:08CV2788 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| SALVATORE RIZZO, M.D., *et al.*, | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF No. 46] |

Plaintiff William Bligh-Glover, M.D. ("Dr. Bligh-Glover") filed the present action against Defendants Salvatore Rizzo, M.D. ("Dr. Rizzo"), in both his official[1] and his individual capacities, and Lake County, Ohio ("Lake County") (collectively "Defendants") claiming employment discrimination under federal and Ohio statutory law.  *See* Second Amended Complaint (ECF No. 45).  Plaintiff claims that Dr. Bligh-Glover was fired in retaliation for protected activity, that his termination violated Ohio public policy, and that he was discriminated against, harassed and terminated because of his disability and sex.  Before the Court is Defendants' Motion for Summary Judgment (ECF No. 46).  Plaintiff has opposed the motion (ECF No. 52) and Defendants have filed a reply memorandum (ECF No. 65).

---

[1] Dr. Rizzo retired in December 2007.  Declaration of Dr. Rizzo (ECF No. 46-2) at ¶ 1.  Lynn Smith, M.D. ("Dr. Smith") succeeded Dr. Rizzo as Lake County Coroner. Pursuant to Fed. R. Civ. P. 25(d), Dr. Smith's name has been automatically substituted as a party.

(1:08CV2788)

Dr. Bligh-Glover died on October 30, 2011.  *See* ECF No. 85 at 2.  The Court substituted Pamela Bligh-Glover, fiduciary of his estate, as Plaintiff in the case.  ECF No. 91.  Subsequently, the Court ordered the parties to file memoranda regarding whether the death of Plaintiff's decedent extinguished any of the pending claims in the case.  ECF No. 92.  Both parties filed memoranda in response.  Plaintiff asserts that all claims survive because there is no congressional intent to suggest otherwise, meaning that federal common law applies to the survival of the Title VII and ADA claims.  ECF No. 95 at 2.  Plaintiff argues that claims under a remedial statute survive and that Title VII and the ADA are both remedial.  Plaintiff  provides decisions in support of its position.  ECF No. 95 at 2.  Plaintiff asserts that the claims under Ohio Rev. Code Chapter 4112 also survive.  ECF No. 95 at 4.  In doing so, Plaintiff cites to the language of the statute favoring liberal construction, to public policy, and to two Ohio survival statutes.  ECF No. 95 at 5.  In Defendants' memorandum, the same two survival statutes are raised, but Defendants' reading of them differs from Plaintiff's.  ECF No. 94 at 2.  Defendants cite *Estate of Cattano v. High Touch Homes, Inc.*, No. E-01-022, 2002 WL 1290411 (Ohio App. 6th Dist. May 24, 2002), a ruling that deems survival of actions under the common law appropriate for actions on property rights, but not personal rights such as those Plaintiff alleges were violated in the present case.  ECF No. 94 at 2.

The Court is more persuaded by the argument in favor of survival in the instant case. Because the survival statutes do not specifically list the present causes of action as surviving and there are no binding decisions regarding the survival of the claims at hand, the Court must decide

2

(1:08CV2788)

whether these claims should survive.  Based upon that information available, the Court finds that the claims survive.

Because the Court finds that none of the federal and state law claims have been extinguished by the death of Dr. Bligh-Glover, it addresses the motion for summary judgment.[2] For the reasons discussed below, Defendants' Motion for Summary Judgment is denied.

## I. Background

Dr. Bligh-Glover began his employment as a forensic pathologist for the Lake County Coroner's Office in September 2002.  The position was part-time and considered to be at will; there was no written employment agreement.  ECF No. 46-1 at 2.  Dr. Rizzo was the Lake County Coroner from 1997-2007.  He hired Dr. Bligh-Glover to a part-time at will position in 2002.  ECF No. 46-2 at ¶¶ 1-2.  Dr. Bligh-Glover's responsibilities included performing autopsies and writing autopsy reports, visiting funeral homes, completing death certificates, and providing assistance to the Lake County Prosecutor's Office when necessary.  ECF No. 52 at 8.

In July 2006, Dr. Bligh-Glover sustained an injury to his foot which led to an infection and hospitalization.  During this time, Dr. Bligh-Glover was told that he had type-2 diabetes, a previously undiagnosed condition, and he was informed that the infection had become severe due to his diabetic condition.  Dr. Bligh-Glover also had an anatomical defect, an abnormal

---

[2] Dr. Rizzo and Lake County's Motion to Exclude the Deposition Testimony of William "Terry" Coleman ("Coleman") (ECF No. 66) was denied by Judge Kathleen M. O'Malley in a non-document order.  The reasons for denial of the motion to exclude deposition testimony are set forth in the Order filed contemporaneously with this opinion.

(1:08CV2788)

shortening of tendons in his right leg, which put excess pressure on the afflicted foot.  ECF No. 52 at 8.

Dr. Bligh-Glover was instructed to avoid putting excess pressure on the injured foot, and because of the infection, diabetes, and anatomical defect, he developed additional ulcers and an infection in the bones of his right foot.  Because of this, Dr. Bligh-Glover had difficulty with mobility, using a wheelchair, cane, and crutches to move about the office.  He also used orthotics, protective shoes, and a handicap parking permit.  ECF No. 52 at 9.  Dr. Rizzo acknowledges that Dr. Bligh-Glover missed approximately five weeks of work due to being hospitalized, and that he used a wheelchair upon his return for four or five weeks.  ECF No. 46-2 at ¶¶ 9-10.

When using the wheelchair,  Dr. Bligh-Glover's capacity to move around the office was limited.  ECF No. 52 at 11.  Individuals in the office, including Dr. Rizzo, had negatively commented about Dr. Bligh-Glover's use of the wheelchair.  ECF No. 52 at 12.  Dr. Bligh-Glover heard and knew of these comments, and spoke to others in the office about them, but did not speak directly to Dr. Rizzo about them.  Drs. Bligh-Glover and Rizzo also had multiple disagreements regarding autopsies.  The parties disagree as to the nature and effect of these disputes.[3]  Drs. Bligh-Glover and Rizzo had a conversation in June 2007 in which Dr. Bligh-Glover's future employment was discussed.  ECF No. 52 at 16.  While the parties dispute exactly what was conveyed during that conversation, each party factors that conversation into their arguments which are examined below.

_____

[3]  The arguments regarding the disagreements will be examined below.

4

(1:08CV2788)

On July 25, 2007, Dr. Bligh-Glover delivered a written letter of complaint (ECF No. 52-10 at 88-90) to Dr. Rizzo and the Lake County Prosecutor claiming discrimination, harassment, and other unlawful conduct toward him committed by Dr. Rizzo.  ECF No. 52 at 16.  Dr. Rizzo terminated Dr. Bligh-Glover from his position approximately three hours later that day for poor performance.  ECF No. 63-3 at 4; *see also* ECF No. 46-1 at 2-3.  Dr. Rizzo testified that upon receiving Dr. Bligh-Glover's complaints,"my reaction to all of them was that he was an evil person," that he felt "anger and disgust and nausea," and that he later "began to think about counter-suing him for defamation."  Deposition Transcript of Dr. Rizzo (ECF No. 59-1) at 32.

On November 25, 2008, Dr. Bligh-Glover filed the underlying complaint against Dr. Rizzo and Lake County.  Plaintiff, with leave of court, filed a Second Amended Complaint (ECF No. 45) on July 13, 2010.  The Second Amended Complaint (ECF No. 45) contains claims for disability discrimination and hostile work environment under 29 U.S.C. § 12101, *et seq.* (the "ADA") and Ohio Rev. Code Chapter 4112; for sexual harassment under 42 U.S.C. § 2000e-5, *et seq.* ("Title VII") and Ohio Rev. Code Chapter 4112; for retaliation under the ADA, Title VII, and Ohio Rev. Code Chapter 4112; and for wrongful termination under Ohio public policy.

## II.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the

5

(1:08CV2788)

burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). The non-moving party must, to defeat the motion, "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact. *Id.* at 248. A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must decide whether the evidence is such that reasonable jurors could find that the non-moving party is entitled to a verdict. *Id.* Summary judgment "will not lie . . . if the evidence is such that a

(1:08CV2788)

reasonable jury could return a verdict for the nonmoving party." *Id.*  To withstand summary

judgment, the non-movant must show sufficient evidence to create a genuine issue of material

fact.  *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a mere

scintilla of evidence in support of the non-moving party's position ordinarily will not be

sufficient to defeat a motion for summary judgment.  *Id.*

### III.  Discussion

### A.  Retaliation

Title VII, the ADA, and the Ohio Revised Code prohibit the termination of an employee

in retaliation for opposing an unlawful employment practice.[4]  A plaintiff alleging retaliatory

termination carries the burden of establishing a *prima facie* case.  *Nguyen v. City of Cleveland*,

229 F.3d 559, 563 (6th Cir. 2000).  A plaintiff must show:  (1) he engaged in protected activity;

(2) that activity was known to the defendant; (3) adverse employment action was taken against

the plaintiff; and (4) the existence of a causal connection between the protected activity and

adverse employment action.  *Id.*  While a plaintiff must present evidence to satisfy each of these

elements, the standard for doing so is not extremely high.  *Id.* at 564; *see also EEOC v. Avery*

*Dennison Corp.*, 104 F.3d 858 (6th Cir. 1997).

The parties agree that the ADA protects against discrimination based upon disability.

The parties also agree that Dr. Bligh-Glover made verbal complaints to coworkers.  The parties

---

[4] 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 12101, *et seq.*; Ohio Rev. Code § 4112.02
(J).

(1:08CV2788)

disagree, however, about the existence of Dr. Bligh-Glover's disability and when it came into
existence.

Defendants argue that Dr. Bligh-Glover's verbal complaints to coworkers were not in
opposition to an unlawful employment practice, therefore, those complaints cannot be considered
protected activity. ECF No. 65 at 9. Plaintiff argues, that Dr. Bligh-Glover's complaints were in
opposition to treatment he received as a result of his use of a wheelchair. Plaintiff also argues
that Dr. Bligh-Glover's written letter may be viewed as part of an attempt to report his employer.

The Court finds that Plaintiff has sufficiently alleged that Dr. Bligh-Glover engaged in
protected activity and that Defendants took adverse action against him. *See Burlington N. &
Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006) ( "[T]he antiretaliation provision . . . is not
limited to discriminatory actions that affect the terms and conditions of employment."). Taking
the facts in the light most favorable to Plaintiff, Plaintiff has shown that Defendants knew about
Dr. Bligh-Glover's protected activity before his employment was terminated.

Defendants also argue that causal connection is not present. Central to this argument is
the claim that Dr. Rizzo had not read the written letter of complaint (ECF No. 52-10 at 88-90)
prior to terminating Dr. Bligh-Glover. Defendants assert that because Dr. Rizzo only read the
letter until after terminating Dr. Bligh-Glover, he could not have been aware of its contents and
could not have known there to be (nor retaliated against) any protected activity. Defendants note
that this was the only complaint Dr. Bligh-Glover had made in writing. ECF 46-1 at 8.
Furthermore, Defendants assert a lack of causal connection because the decision to fire Dr.
Bligh-Glover had been made prior to receiving Plaintiff's letter. ECF No. 65 at 8. Using this

8

(1:08CV2788)

line of reasoning, Dr. Rizzo's failure to read the letter from Dr. Bligh-Glover would mean that

both the knowing element and causal connection element have not been satisfied.

Plaintiff, in arguing that causal connection exists, claims that the reasons given for Dr.

Bligh-Glover's termination were not genuine and merely a pretext for dismissal.  ECF No. 52 at

18.  The issue of Dr. Rizzo's stated cause for termination of Dr. Bligh-Glover is important to the

establishment of causal connection as well as in the later analyses of the discrimination and

public policy claims.  As he does in arguing against the other claims, Dr. Rizzo relies vigorously

on the assertion that his reason for firing Dr. Bligh-Glover was poor performance and that his

decision was carefully considered, rather than a decision made on the "spur of the moment."

ECF No. 46-1 at 3.  Defendants argue that the mistakes Dr. Bligh-Glover made were severe and

numerous, and were viewed in totality when considering the termination of his employment.

ECF No. 65 at 10.  These mistakes included errors in autopsy reports, lateness in completion of

work, and tardiness in arriving to work.  ECF No. 46-1 at 2-3.  Defendants bolster these

assertions by presenting autopsy reports wherein Plaintiff had made careless mistakes.  ECF No.

46-1 at 3.  Plaintiff maintains that these accusations are false.  ECF No. 52 at 23-24.  Dr. Rizzo

also testified that Plaintiff was "sloppy" in his work,  purposefully let work accumulate, and

openly disrespected him.  Deposition Transcript of Dr. Rizzo (ECF No. 59-3) at 49-50.

Plaintiff concedes that Dr. Rizzo had previously spoken of firing Dr. Bligh-Glover, but

Dr. Rizzo had not take action.  ECF No. 52 at 33.  Plaintiff maintains that no action was taken

until Plaintiff haddelivered his written letter of complaint (ECF No. 52-10 at 88-90); and that

while disagreements had existed between forensic pathologists and the coroner before, no

9

(1:08CV2788)

forensic pathologist had ever been reprimanded over a professional disagreement about the cause of death.  ECF No. 52 at 24.  The proximity between the delivery of the letter and termination is also alleged by Plaintiff to be evidence of causal connection.  ECF No. 52 at 28.  Furthermore, Plaintiff argues that Dr. Bligh-Glover's verbal complaints to others in the office had been occurring for months, and so it may be possible to find that Dr. Rizzo was aware of those complaints and was retaliated against because of them.  ECF No. 52 at 33.

To satisfy the element of causal connection, a party must show that the adverse employment action would likely *not have occurred* but for the employee's claim against the employer.  *Nguyen*, 229 F.3d at 563.  While not usually sufficient on its own in showing a claim, temporal proximity is also considered as evidence of causal connection.  *Asmo v. Keane, Inc.,* 471 F.3d 588, 593 (6th Cir. 2006).  The mere hours between Dr. Bligh-Glover's submission of the letter and his termination may demonstrate relevant temporal proximity.  There is no established window of time between activity and termination used to determine whether causal connection exists, the Court, however, finds the mere three hours following  Dr. Bligh-Glover's delivery of the letter and his termination  to be compelling, for the purpose of establishing a prima facie claim.  As Plaintiff correctly points out, the reasons given for termination (mistakes in reports, lateness, etc.) had allegedly been occurring well before July 25, 2007, Defendant had the opportunity to terminate Dr. Bligh-Glover at any time before this point, and such termination happened not to occur until the day of receipt of the only written complaint.  ECF No. 52 at 17. It is also apparent that no written performance evaluations, demerits, or assessments exist to document Dr. Bligh-Glover being reprimanded for his work.  Plaintiff points out that Dr. Bligh-

10

(1:08CV2788)

Glover's receipt of a pay raise each year belies a claim that he was an undesirable employee.  *See*

ECF No. 59-1 at 49-55.

Plaintiff argues that Dr. Rizzo's negative reaction to the letter may further evidence a

causal connection.  ECF No. 52 at 28.  Reactions to legitimate protected activities may be used as

evidence for such claims.  *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973).

Plaintiff proffers that Dr. Rizzo's feelings regarding the letter—anger, disgust, the feeling that

Plaintiff was evil—as evidence that this was a reaction and thus part of retaliation against Dr.

Bligh-Glover.  ECF No. 52 at 33.  Defendant argues that Dr. Bligh-Glover was informed of his

termination, both verbally and in writing, *before* Dr. Rizzo read the letter.  ECF No. 46-1 at 8.

This argument, however, fails to dispense with the possibility of a causal connection to the other

verbal complaints to Drs. Rizzo or Smith or County Prosecutor Charles E. Coulson.  ECF No. 52

at 33.  It is not disputed that Dr. Bligh-Glover's complaints voiced to Dr. Smith were relayed

directly to Dr. Rizzo on more than one occasion.  Deposition Transcript of Dr. Smith (ECF No.

61-1) at 50.

While an employer is not prohibited from terminating an employee for a legitimate

reason, a trial court is not the final arbiter of those reasons.  Rather, the employer will have the

opportunity to demonstrate to a jury that such was the real reason as part of the burden-shifting

framework, presuming that an employee's prima facie claim is successfully established.

*McDonnel Douglas Corp*, 411 U.S. at 803.  The Court finds that all of the requisite elements of a

*prima facie* retaliation claim could be found by a jury.

11

(1:08CV2788)

Once a *prima facie* case is established, the burden then shifts to the defendant "to prove by a preponderance of the evidence that the employment decision would have been the same absent the protected conduct." *Baker v. Windsor Republic Doors , 414 Fed.Appx. 764, 778 (6th Cir. 2011)* (quoting *Sowards v. Loudon Cnty., Tenn., 203 F.3d 426, 431 (6th Cir. 2000)*.  If the defendant satisfies this burden of production, the burden shifts back to plaintiff to show defendant's proffered reason is pretext for unlawful discrimination.  *See id.*

In addition to the argument that Dr. Rizzo had not read the written letter of complaint (ECF No. 52-10 at 88-90) prior to terminating Dr. Bligh-Glover, Defendants argue that the termination letter (ECF No. 63-3 at 4) had been written for Dr. Rizzo by Prosecutor Coulson and emailed to Dr. Rizzo on July 23, 2007–two days before Dr. Bligh-Glover delivered his letter to Dr. Rizzo.  Deposition Transcript of Prosecutor Coulson (ECF No. 57-1) at 51-53.  Prosecutor Coulson testified that the termination of Dr. Bligh-Glover was the "natural conclusion of every conversation" between him and Dr. Rizzo about Dr. Bligh-Glover.  ECF No. 57-1 at 50. Moreover, Defendants assert that Plaintiff, when arguing that the reasons for Dr. Bligh-Glover's termination were pretextual, fails to deny that his careless mistakes were the true reason for discharge and that Plaintiff has taken Dr. Rizzo's testimony out of context in arguing that the given reasons were false.  ECF No. 65 at 9-10.  The fact that Dr. Rizzo had discussed terminating Dr. Bligh-Glover in the past with Prosecutor Coulson is not enough to show that the termination was completely unrelated to Dr. Bligh-Glover's verbal complaints.  The letter, even if unopened, contained complaints that Dr. Bligh-Glover had previously voiced to other employees, who voiced them to Dr. Rizzo.  Therefore, the timing of Dr. Rizzo's opening the letter fails to prove

12

(1:08CV2788)

that the termination could not have been related to Dr. Bligh-Glover's activity.  Even if Plaintiff

has failed to disprove that Dr. Bligh-Glover made careless mistakes in the autopsy reports, those

mistakes alone may not be enough to demonstrate to a jury that his termination was impending

regardless of his conduct.  As such, Plaintiff has raised a genuine issue of material fact as to

pretext, and summary judgment on this claim of discriminatory retaliation is denied.

**B.  Termination as Violating Ohio Public Policy**

In Ohio, an employee may bring a claim of wrongful discharge against his employer in

tort.  *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228 (1990).  As a

matter of public policy, an employer may not terminate an employee for a reason prohibited by

law.  *Id.* at 235.  To state a claim of wrongful discharge in violation of public policy,

> a plaintiff must plausibly allege that:  (1) a clear public policy existed, manifested
> in a state or federal constitution, statute or administrative regulation (clarity
> element); (2) dismissing employees under such circumstances would jeopardize
> the public policy (jeopardy element); (3) conduct related to the public policy
> motivated the dismissal (causation element); and (4) the employer lacked an
> overriding legitimate business justification (justification element).

*Unger v. City of Mentor*, 387 Fed.Appx. 589, 593-94 (6th Cir. 2010) (citing *Kulch v. Structural*

*Fibers, Inc.*, 78 Ohio St.3d 134, 151 (1997)).  The clarity and jeopardy elements are issues of law

while the causation and justification elements are questions of fact for determination by the

fact-finder.  *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 171 (2011) (citing *Collins v.*

*Rizkana*, 73 Ohio St.3d 65, 70 (1995)).

Plaintiff argues that Defendants' termination of Dr. Bligh-Glover violated the public

policy of Ohio as contained in Ohio Rev. Code Chapter 313, which sets out the law governing

coroners and their duties in the State of Ohio.  ECF No. 52 at 33.  It states that a coroner must

13

(1:08CV2788)

record "the detailed descriptions of the observations written during the progress of an autopsy"

and then file "the conclusions drawn from those observations."  Ohio Rev. Code § 313.10(A)(1).

The thrust of Plaintiff's argument is that Dr. Rizzo routinely violated Ohio public policy by

submitting false autopsy reports.

> For example, in a case where an individual died after suffering a reaction to
> medication and requiring CPR, Bligh-Glover determined that the cause of death
> was blunt trauma to her chest during the performance of CPR, as evidenced by
> multiple rib fractures she suffered.  Rizzo changed the cause of death to indicate
> she died before she was taken into custody of emergency services.  Similarly,
> Rizzo certified a street drug overdose case as a "natural" death "so as not to cause
> distress to the mother."  Rizzo followed the same pattern in refusing to certify a
> suicide after a man overdosed and acknowledged before death that he did so to
> kill himself.

ECF No. 52 at 34-35 (footnotes omitted).  The Court concludes that a clear public policy existed,

manifested in Ohio Rev. Code Chapter 313.  Furthermore, dismissing Dr. Bligh-Glover under the

circumstances asserted by Plaintiff would jeopardize the public policy.

Dr. Bligh-Glover complained of these alleged "false" autopsy reports in his written letter

of complaint (ECF No. 52-10 at 88-90).  By terminating Dr. Bligh-Glover's employment, a

fact-finder could find that Dr. Rizzo acted in order to discourage a complaint that Ohio law had

been violated, which is contrary to a public policy goal of the state.  Defendants argue that what

Plaintiff refers to as falsifications are actually differences of professional opinion.  They also

reassert that Plaintiff's argument that his termination was prompted in any way by his letter that

reported illegal conduct lacks merit.  ECF No. 65 at 11.

While it is possible for a coroner to make a false autopsy report, which would be illegal

under Ohio Law, there is a genuine dispute in the case at bar as to whether any of Dr. Rizzo's

14

(1:08CV2788)

reports constituted such an action.  It is plainly stated in the record that both parties disagreed over details in the autopsy reports.  It is also apparent that Dr. Rizzo, as Coroner, had the appropriate discretionary authority over the reports.  Hence,  he had the final say in what to change, include, or exclude in an autopsy report.  The issue is whether Dr. Rizzo's conduct was merely discretionary or a false representation.  In light of the parties' divergent views of the evidence discussed, the Court finds that this as an issue of material fact and reserves such for a jury.  Thus, summary judgment regarding Plaintiff's wrongful discharge in violation of public policy claim is denied.

**C. Discrimination and Hostile Work Environment Based on Disability and Sex**

In the Fifth, Sixth, and Seventh Causes of Action of the Second Amended Complaint (ECF No. 45), Plaintiff asserts claims of employment discrimination on the basis of Dr. Bligh-Glover's sex, disability, and hostile work environment under Ohio Revised Code §§ 4112.02 and 4112.99, Title VII, and the ADA.

**1.  Plaintiff's Disability**

Employment discrimination based upon disability is prohibited under Ohio and federal law.  Under Ohio Rev. Code § 4112.02(A), it is illegal for an employer to discriminate against an employee on the basis of disability.  42 U.S.C. § 12112(a) states "[n]o covered entity shall discriminate against a qualified individual on the basis of disability."  "Discriminate" is defined to include "limiting, segregating, or classifying a[n] . . . employee in a way that adversely affects the opportunities or status of such . . . employee because of [a] disability."  42 U.S.C. § 12112(b)(1).

15

(1:08CV2788)

Defendants argue that Dr. Bligh-Glover had no apparent disability.  ECF No. 46-1 at 5-7.

Under the ADA, a disability is defined as "(A) a physical . . . impairment that substantially limits

one or more major life activities of such individual; (B) a record of such an impairment; or (C)

being regarded as having such an impairment." 42 U.S.C. § 12102(1); *see also Moorer v. Baptist*

*Mem'l Health Care Sys.*, 398 F.3d 469, 479 (6th Cir. 2005); Ohio Rev.Code § 4112.01(A)(13).

The record indicates that Dr. Bligh-Glover had trouble walking.  Walking is a common,

necessary activity that is normally required to go about one's daily activities, and as Plaintiff

points out, an activity listed in the statute.  ECF No. 52 at 19.  Plaintiff describes Dr. Bligh-

Glover's condition as limiting his ability to walk, diminishing it permanently.  ECF No. 52 at 18.

Plaintiff argues that standing and walking are indisputably major life activities, and that Dr.

Bligh-Glover's diminished capacity to do so rendered him disabled. *White v. Telcom Credit*

*Union*, No. 11–12118, 2012 WL 2324393, at *19 (E.D. Mich. June 19,2012) (finding that

genuine issue of material fact existed as to whether employee suffered from a disability,

precluding summary judgment in her Michigan's Persons With Disabilities Civil Rights Act

discrimination claim).

Defendants' argument that Dr. Bligh-Glover was not disabled rests on the claim that his

limitation was temporary and that diabetes does not qualify as a disability.  ECF No. 46-1 at 6.

This position is based principally upon *Novak v. MetroHealth Medical Center*, 503 F.3d 572 (6th

Cir. 2007) and *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482 (6th Cir. 2000).  In *Novak*,

the Sixth Circuit stated that an impairment must be permanent or long-term to be considered a

disability under the ADA. *Novak*, 503 F.3d at 582.  It also noted that when determining if an

(1:08CV2788)

individual is substantially limited in performing a major life activity, a court should consider "(1)
the nature and severity of the impairment, (2) the duration or expected duration of the
impairment, and (3) the permanent or long-term impact of the impairment." *Id.* at 581.

       Defendants attempt to demonstrate that Dr. Bligh-Glover's situation should not be
considered a disability by claiming that his stay in the hospital and use of the wheelchair were
only temporary and not long enough to be considered long-term. ECF No. 46-1 at 6.  Diabetes
can qualify as a disability under the ADA, in some circumstances, *see Brenneman v. Medcentral
Health Sys.*, 366 F.3d 412 (6th Cir. 2004), but not always, *see Gilday v. Mecosta County*, 124
F.3d 760, 762 (6thCir. 1997).  In arguing that diabetes is not a substantial impairment under the
ADA, Defendants cite to *Hein* for support.  In that case, the Sixth Circuit cites to *Gilday*, where it
reviewed a district court's holding that a Plaintiff's diabetic condition would not constitute a
disability *if* effectively controlled by medication and not considered substantially limiting to that
Plaintiff's life and work activities.  However, the Sixth Circuit stated that the real question was
whether to consider aids that mitigate the diabetes when deciding if that condition was a
disability.  *Gilday*, 124 F.3d at 762.  The Sixth Circuit noted that the courts are divided regarding
this question, and it ultimately sided with the interpretation that the condition should be
considered in its uncontrolled, unmitigated, or unmedicated state.  *Id.* at 763.  Under that
interpretation, the Court concluded that a question of material fact existed regarding whether
diabetes, on its own, was a disability and thus reversed the district court's grant of summary
judgment.  *Id.* at 766.  Moreover, unlike *Gilday*, Dr. Bligh-Glover's diabetic condition was not
his sole impairment.  Rather, it was arguably one of multiple impairments.

(1:08CV2788)

Plaintiff claims that this confluence of impairments should be characterized as more than just diabetes. Plaintiff argues that Dr. Bligh-Glover's condition was three-fold: Type-2 diabetes, nerve damage from diabetes, and diabetic ulcers caused by anatomical defects in his feet resulting in an abnormal shortening of his Achilles tendons. ECF No. 52 at 6, 8-9, and 17. This confluence of factors appears to be more than just a controllable medical condition as was the case in *Gilday*. Whether recurring ulcers and infection in the bones rises to the level of a disability is a question best suited for a jury. The same may be said for deciding if the injury was long-term or permanent, considering Plaintiff's claim that Dr. Bligh-Glover did not regain his full abilities after his injury. Although the use of the wheelchair was not permanent while Plaintiff was still employed, the use of the chair or any aiding device is not necessary to prove a physical impairment. For these reasons, Plaintiff's claim of having a disability survives summary judgment.

Dr. Bligh-Glover need not have actually been disabled to gain protection under the statute, so long as he had been treated as or regarded as being disabled. 42 U.S.C. § 12102(1). An individual is "regarded as having such an impairment" if "the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). Whether an individual's impairment "substantially limits" a major life activity is "not relevant" to coverage under the "regarded as" prong. 29 C.F.R. § 1630.2(j) (2). Importantly, the regulations implementing the ADA, as amended, consistent with Congress's broad purpose to liberalize the ADA, broadly define

18

(1:08CV2788)

"physical or mental impairment" as "[a]ny physiological disorder or condition . . . or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, [or] endocrine." 29 C.F.R. § 1630.2(h)(1).  Therefore, the relevant inquiry for establishing a disability under the third prong is an examination of whether Defendants regarded Dr. Bligh-Glover as possessing one of the listed impairments.  Plaintiff argues that Dr. Bligh-Glover qualifies as such because he was regarded as disabled by Defendants.  Defendants were aware of his hospitalizations, his physical limitations, and had made comments on his limitations.  ECF No. 52 at 20.

Defendants argue that Dr. Bligh-Glover, if disabled, was not visibly disabled in their presence.  ECF No. 65 at 6.  Plaintiff has presented evidence that various individuals, including Dr. Rizzo, had witnessed Dr. Bligh-Glover's use of a wheelchair.  Defendants argue that this, being only temporary, does not qualify as a disability.  ECF No. 46-2 at ¶ 9.  Dr. Rizzo also states that Dr. Bligh-Glover "acted like he was not disabled" when he was in the presence of Dr. Rizzo, essentially claiming that he could not have been aware of Dr. Bligh-Glover's condition because it was hidden or because it was not manifest until after his termination.  ECF No. 46-1 at 6-7; ECF No. 65 at 5-6.  The Court finds that the evidence advanced by both parties indicates a genuine issue of material fact as to whether Plaintiff was considered or treated as disabled by Defendants, and so the question belongs to a jury.  Plaintiff's presentation of evidence that he was disabled or regarded as disabled is sufficient to survive summary judgment.

19

(1:08CV2788)

### 2. Discrimination Based upon Disability

In a case involving alleged intentional discrimination under the ADA, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive. *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348-49 (6th Cir. 1997). Direct evidence in this context refers to a method of proof, simply meaning that a plaintiff may directly present evidence, of any nature, to show that it was probable that an employer acted with discriminatory intent. *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 587 (1996). Plaintiff claims to have supplied ample evidence to this end. Plaintiff asserts that those Dr. Bligh-Glover worked with, including Dr. Rizzo, resented Dr. Bligh-Glover's physical condition, and that they expressed their resentment through openly being frustrated, making comments (including calling Dr. Bligh-Glover "lazy" and referring to his wheelchair as "that goddamn wheelchair") teasing him, and asking "when he was going to stand on his own two feet." ECF No. 52 at 21-22. Plaintiff also alleges that "muffled jokes" were made about Dr. Bligh-Glover's wheelchair, cane and crutches. ECF No. 56-1 at 24-25.

Defendants oppose this claim based on the argument that Dr. Bligh-Glover was not disabled at or before the time that his employment was terminated. ECF No. 65 at 5-6. Defendants also argue that Plaintiff's argument is rife with misrepresentations and that it wrongly attributes to "the Defendants" numerous alleged actions and statements which are neither those of Dr. Rizzo nor those of a person authorized to speak for Lake County. ECF No. 65 at 1. Because it has been determined that the existence of Dr. Bligh-Glover's disability survives

(1:08CV2788)

summary judgment, the Court does not again address Defendants' denial of the claim based upon the argument that there is no disability under the ADA.  Furthermore, Defendants provide no authority stating that the employees of the Lake County Coroner's office are not agents of that entity or were excluded from the work environment.

Plaintiff may also prove that Dr. Bligh-Glover was discriminated against based upon his disability through indirect circumstantial evidence.  When using indirect evidence, the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies. First, the plaintiff must prove a *prima facie* case of discrimination.  If the plaintiff is successful, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the plaintiff's termination.  If the defendant carries this burden, the plaintiff then has an opportunity to prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.  Throughout this process, it is essential to remember that the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff never leaves the plaintiff.

A plaintiff may establish a *prima facie* case for disability discrimination by showing (1) he is disabled; (2) he is otherwise qualified for the position; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of his disability; and (5) after termination, the disabled individual was replaced by a member outside the protected class. *Hopkins v. Electronic Data Systems Corp.*, 196 F.3d 655, 660 (6th Cir. 1999).  The Court has addressed  the questions of disability, adverse employment action and knowledge of disability *supra*.  Plaintiff argues that Dr. Bligh-Glover was qualified for the position based on Dr. Rizzo's

21

(1:08CV2788)

own testimony, and that he was replaced by a member outside of the protected class, because his replacement, Dr. Van Kirk, was not disabled.  ECF No. 52 at 22.  The Court concludes that Plaintiff has satisfied the "not onerous" burden of proving a prima facie case of discrimination based on disability.  *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 870 (6th Cir. 2001).

The burden then shifts to Defendants to rebut the claim.  Providing legally sufficient reasons for termination may suffice in doing so.  *McDonnell Douglas*, 411 U.S. at  802; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).  As explained in the above analysis for the retaliation claim, Defendants have asserted that the reasons for terminating Dr. Bligh-Glover were performance-related:  inaccurate autopsy reports, lateness without excuse, and failure to complete work in a timely manner.

Plaintiff then argues that the evidence shows Defendants' proffered reasons for the termination were pretextual for unlawful discrimination.  ECF No. 52 at 23-27.  In demonstrating pretext, "[t]he plaintiff retains the burden of persuasion" and " must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision" based on a preponderance of the evidence standard.  *Burdine*, 450 U.S. at 256.  In addition to the evidence above, Plaintiff liberally uses excerpts of testimony from various depositions to show inconsistency in Defendants' explanations for terminating Dr. Bligh-Glover.  ECF No. 52 at 25-26.  The central argument is that Defendants' several explanations, as well as subjective performance criteria, further demonstrate a pretextual basis for Dr. Bligh-Glover's termination.  ECF No. 52 at 25-26.  Any inconsistencies in testimony are best left to a jury making a credibility determination.  *Szymanski v. Rite-Way Lawn Maintenance Co.*, 231 F.3d 360, 365-66 (7th Cir.

(1:08CV2788)

2000).  Plaintiff claims that the vague criteria in the performance assessment, being wholly subjective and undocumented by Defendants, shows an attempt to disguise the real reason for Dr. Bligh-Glover's dismissal.

Plaintiff has alleged that Dr. Bligh-Glover's disability was a factor along with his sex. The Sixth Circuit in a very recent opinion has made clear that disability does not have to be the only factor in an ADA case, rather only a but-for cause of an employer's adverse employment action.  *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 314-16 (6th Cir. 2012). Plaintiff has presented enough evidence from which a jury could conclude that Dr. Bligh-Glover was terminated because of his disability.  Defendants' request for summary judgment on Plaintiff's disability-based discrimination claim is denied.

### 3.  Hostile Environment Sexual Harassment Claim

Plaintiff argues that Defendant created a hostile work environment by harassing Dr. Bligh-Glover based on sex.  In order to bring a sexual harassment claim based on a hostile working environment, a plaintiff must show the following:  (1) the employee was a member of a protected class; (2) the employee was subject to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the charged sexual harassment created a hostile work environment; and (5) the existence of employer liability.  *Clark v. United Parcel Serv., Inc.*, 400 F.3d 341, 347 (6th Cir. 2005).  "[S]ex discrimination claims under Ohio Revised Code § 4112 are analyzed according to the same standards used to analyze federal discrimination claims under Title VII."  *Myers v. Cuyahoga Cnty., Ohio*, 182 Fed.Appx. 510, 517 (6th Cir. 2006)

(1:08CV2788)

(citing *Cincinnati Bar Ass'n. v. Young*, 89 Ohio St.3d 306, 315 (2000)); *see also Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 270 (6th Cir. 2009).

Plaintiff asserts that the respective elements are met and there is no reasonable dispute regarding their existence.  Dr. Bligh-Glover, as a male, qualifies as a member of a protected class because Title VII protects both men and women.  As to same-sex harassment by a male employee's supervisor, the Supreme Court has held that same-sex harassment is actionable under Title VII under certain circumstances.  *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 82 (1998).  Certain comments made to Dr. Bligh-Glover had to do with his sex.  Plaintiff attributes nearly all of the conduct to Dr. Rizzo, a supervisor.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Plaintiff brings the Title VII and Ohio Rev. Code Chapter 4112 causes of action under a hostile work environment theory.  Under this theory, a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," violates Title VII.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted); *see also  Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008).  "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances."  *Oncale, 523 U.S. at 81* (citation and internal quotation marks omitted).  Whether conduct is severe or pervasive is "quintessentially a

24

(1:08CV2788)

question of fact." *Jordan v. City of Cleveland*, 464 F.3d 584, 597 (6th Cir. 2006) (quoting

*O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999) ("the severity

and pervasiveness evaluation is particularly unsuited for summary judgment").

Plaintiff argues that Dr. Bligh-Glover was discriminated against and harassed sexually

and that such conduct was sufficient to create a hostile work environment.  ECF No.52 at 28-32.

The alleged actions include:  sexually inappropriate comments made in front of Dr. Bligh-

Glover, including comments directed at Dr. Bligh-Glover himself; grabbing Dr. Bligh-Glover in

his groin;[5] kissing his forehead; and otherwise touching him, including on the back and buttocks.

ECF No. 52 at 28-29.  Plaintiff asserts that Defendants teasing Dr. Bligh-Glover about his sex

life, the sex life of his mother, and referring to him as the "40-year old virgin" also contributed to

a sexually hostile work environment.  ECF No. 52 at 28.

Plaintiff argues that the above shows Dr. Bligh-Glover was effectively discriminated

against, being disadvantaged in the terms and conditions of his employment, because of his sex.

ECF No. 52 at 29.  Rather than claiming that discrimination occurred because he was a man,

Plaintiff argues that his gender in this context is irrelevant because such treatment was

"inherently and sexually" degrading, thus offensive and thereby discriminatory regardless of

whether an employee is a man or woman.  ECF No. 52 at 29.  Plaintiff claims that the harassment

coupled with the physical contact was enough to establish an objectively hostile work

environment.  ECF No. 52 at 29.

---

[5]   The parties disagree as to exactly where Dr. Rizzo grabbed him.  Plaintiff
alleges it was Dr. Bligh-Glover's penis.  Dr. Rizzo testified that it was somewhere in the
region.  Yet, both parties concede that it was somewhere near the groin and upper thigh.

(1:08CV2788)

In showing that Dr. Bligh-Glover's treatment was unwelcome, disturbing and ongoing, Plaintiff looks to establish that it was sufficiently severe and pervasive to create a hostile work environment.  Plaintiff argues that Dr. Bligh-Glover was ridiculed several times per week, and that he found it hostile, abusive, threatening and humiliating.  ECF No. 52 at 30.  He argues that the physical contact—the touching and kissing on the forehead—were extremely humiliating, patently degrading and directed at him specifically because of his sex.  ECF No. 52 at 29.

Plaintiff has presented enough evidence to create material questions of fact as to whether Dr. Bligh-Glover was subjected to a hostile work environment based on sex.

### IV.  Conclusion

For the reasons stated herein, Defendants' Motion for Summary Judgment (ECF No. 46) is denied.


IT IS SO ORDERED.


  September 30, 2012                          /s/ Benita Y. Pearson
Date                                   Benita Y. Pearson
                                       United States District Judge

26